# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   SHERILL LYNN JOHNSON,                                  No. 7-07-12012 MA

      Debtor.
_____

STATE OF NEW MEXICO, ex rel.
GARY K. KING, Attorney General,

     Plaintiff,

v.                                                             Adversary No. 07-1164 M

SHERILL LYNN JOHNSON,
a/k/a Sherill Lynn Blaney, a/k/a
Sherill Pohl, and RICHARD T.
BLANEY,

     Defendants.

### <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment ("Motion").   Plaintiff State of New Mexico, ex rel. Gary K. King, Attorney General, requests the Court enter summary judgment in its favor finding that a judgment debt Defendant Sherill Lynn Johnson owes to the Plaintiff arising from a civil penalty and from a judgment for restitution for which Defendant is jointly and severally liable with Richard Blaney is not dischargeable, and that Defendant Sherill Lynn Johnson should be denied a discharge under 11 U.S.C. § 727(a)(2) and/or (4).   Defendant opposes the Motion, asserting, among other things, that she did not have the requisite intent to defraud necessary to deny her discharge under 11 U.S.C. § 727(a)(2) or (4), and that questions involving a Defendant's intent should not generally be determined on summary judgment.

1

After consideration of the Motion and supporting memorandum, along with the supporting affidavits and exhibits; the Defendant's response; and Plaintiff's reply; and being otherwise sufficiently informed; the Court finds that there is sufficient undisputed evidence to deny the Defendant's discharge under 11 U.S.C. § 727(a)(4) and/or 11 U.S.C. § 727(a)(2)(A) based on Defendant's false statements contained in her statements and schedules, her testimony at her creditor's meeting and at her Rule 2004 deposition, and on her post-petition transfer of property of the estate. Consequently, the Court will grant the Motion.[1]

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rule 7056, Fed.R.Bankr.P. The party requesting summary judgment must demonstrate to the Court that the undisputed facts entitle the movant to judgment as matter of law.[2] In determining whether summary judgment should be granted, the Court must view the facts in the light most favorable to the party opposing summary judgment.[3]

---

[1]Because the Defendant's discharge will be denied under 11 U.S.C. § 727, the Court need not address Plaintiff's request for summary judgment on its claims for non-dischargeability under 11 U.S.C. § 523.

[2] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ("[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact.").

[3]*Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .")(citation omitted); *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 2007).

In opposing a motion for summary judgment, the non-moving party

> may not rely merely on allegations or denials in its own pleading; rather, its response
> must – by affidavits or as otherwise provided in this rule – set out specific facts showing
> a genuine issue for trial. If the opposing party does not so respond, summary judgment
> should, if appropriate, be entered against that party.
>
> Rule 56(e), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7056,
> Fed.R.Bankr.P.

A fact is "material" when the fact is essential to the elements necessary under the substantive law

to dispose of the claim.[4]  An issue is "genuine" when there is sufficient evidence on either side

"so that a rational trier of fact could resolve the issue either way." [5]

UNDISPUTED FACTS

The following facts are undisputed:

1. Defendant Sherill Lynn Johnson filed a voluntary petition under Chapter 7 of the

Bankruptcy Code on August 17, 2007 as Case No. 7-07-12012 MA.

2. Defendant filed her petition under the name Sherill Lynn Johnson.  She listed the

name Sherill Lynn Pohl on the petition in response to the item requesting disclosure of all other

names used by the debtor in the last eight years.

3. Defendant testified under penalty of perjury at the meeting of creditors held

September 27, 2007 that her statements and schedules filed in her bankruptcy proceeding were

true and correct.

4. Defendant testified at her deposition taken April 11, 2008 that she "never went by

---

[4]*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[5]*Id.*

3

Sherill Blaney . . . [that] it is obviously me, but I never used the name Sherill Blaney." *See* Plaintiff's Exhibit 3 - Deposition of Sherill Johnson taken April 11, 2008 ("Johnson Deposition"), p. 17, lines 8 - 12.

5.  Defendant's mother, Carol Pohl, passed away on October 5, 2006.

6.  Defendant served as personal representative of the estate of Carol A. Pohl under the name Sherill Lynn Blaney. *See* Plaintiff's Exhibit 8 - Application for Informal Probate of Will and for Informal Appointment of Personal Representative, signed by Sherill Lynn Blaney, as Applicant; Plaintiff's Exhibit 9 - Letters Testamentary and Acceptance; Exhibit I to Complaint - Inventory and Appraisal filed in Case No. PB 2006-00610, signed by Sherill Lynn Blaney, as Personal Representative of the Estate of Carol A. Pohl.

7.  Defendant did not disclose the name Sherill Lynn Blaney in her statements or schedules.

8.  The Last Will and Testament of Carol A. Pohl provided for the Defendant and her two brothers to share equally in the net estate. *See* Plaintiff's Exhibit 11, p. 2.

9.  The total value of the estate of Carol A. Pohl as reported in the probate action was $108,347.78, including certain real property valued at $70,368.54. *See* Exhibit I to Complaint - Inventory and Appraisal.

10.  Defendant received a check in the amount of $21,156.18 dated November 29, 2006, representing her share of the proceeds from the sale of her mother's real property. *See* Plaintiff's Exhibit 10 - Deposition of Richard Walker taken March 26, 2008 ("Walker Deposition"), and exhibits attached thereto; Johnson Deposition, p. 69, lines 4-6 (acknowledging that the $21,000 was her share of the proceeds from the sale of Defendant's mother's house).

4

11.  From the $21,156.18 Defendant received from the sale of her mother's real property, Defendant purchased a certificate of deposit in the name of her daughter, Tracey Johnson, in the amount of $16,000.00 at Bank of the West.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 24, lines 20-24; Plaintiff's Exhibit 12, Deposition of Tracey Johnson taken March 28, 2008 ("Tracey Johnson Deposition").   Defendant kept the remainder of the funds.  Exhibit 3 - Johnson Deposition, p. 25, lines 24-25 and p. 26, lines 1-3. ("I kept a little bit from the money I got from my mother to help me reestablish myself. And that chunk of money [$16,000], I felt my mother would like my children to have it.").

12.  Defendant held back an additional $15,000.00 from the sale of her mother's real property, to be used as a reserve for payment of the debts and expenses of administration of her mother's probate estate.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 69, lines 7-14; Plaintiff's Exhibit 10 - Walker Deposition, p. 10, lines 1 -5.   This amount represents a $5,000.00 share for Defendant and each of her two brothers.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 69, lines 7-15.  Defendant deposited the $15,000.00 in a checking and savings account at Bank of the West opened in the name of her daughter, Tracey Johnson.  Plaintiff's Exhibit 12 - Tracey Johnson Deposition.

13.  Neither the Certificate of Deposit nor the checking and savings account at the Bank of the West were disclosed in Defendant's statement of financial affairs under the category, Property held for another person.    Nor was there any reference to an account or Certificate of Deposit at Bank of the West disclosed elsewhere in Defendant's statements and schedules.

14. Post-petition, the Certificate of Deposit at the Bank of the West matured and was cashed out.  Plaintiff's Exhibit 3 - Johnson Deposition, p. 25.  The balance of the checking and

savings account at Bank of the West was also closed out at this time. *See* Plaintiff's Exhibit 3 -
Johnson Deposition, p. 25, lines 16-25, p. 26, lines -4, and p. 74, lines 1-8. Defendant's
daughters spent the money from the accounts. *Id.*

15. Defendant was the named beneficiary on her mother's Individual Retirement
Account ("Mother's IRA") and on her mother's CIGNA life insurance policy. *See* Plaintiff's
Exhibit 10 - Walker Deposition, p. 16 (regarding insurance policy); Plaintiff's Exhibit 3 -
Johnson Deposition, p. 24, lines 8-11 (regarding Mother's IRA).

16. Shortly after her mother's death, Defendant received a disbursement from her
Mother's IRA and received a distribution of $14,000.00 from the CIGNA life insurance policy,
which she maintained in a CIGNA Assurance Program depository account. *See* Plaintiff's
Exhibit 3 - Johnson Deposition, pp. 64-66. Defendant used a portion of the insurance monies
to even out the probate estate distributions to her two brothers. *See* Plaintiff's Exhibit 10 -
Walker Deposition, pp. 13-16.

17. Defendant was the buyer under a real estate contract for the purchase of a residence
located at 5715 Don Lorenzo, SW, Albuquerque, New Mexico ("Don Lorenzo Property"). *See*
Plaintiff's Exhibit 3 - Johnson Deposition, p. 39, lines 19-22 ("It looks like the real estate
contract. Q. The one that you were buying the house on Don Lorenzo? A. Yes.") and 40, line 15
("The house was obviously in my name, so, yes, I was making the payments.").

18. On or about January 16, 2007 the Don Lorenzo Property was sold. Defendant
received $12,031.54 from the sale of the Don Lorenzo Property. *See* Exhibit G to Complaint -
Check from Commerce Title Company of New Mexico, LLC payable to Sheri Johnson in the
amount of $12,031.54. Defendant transferred half of the proceeds from the sale of the Don

Lorenzo Property to Richard Blaney.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 52, lines 19-22.

19.  Defendant did not disclose the sale of the Don Lorenzo Property on the Statement of Financial Affairs filed with the petition.

20.  Defendant testified at the meeting of creditors that she did not sell, transfer, or give away any valuable property during the two years prior to the date of the filing of her bankruptcy petition.  *See* Exhibit E to Complaint - Transcript from Meeting of Creditors held September 21, 2007 ("§ 341 Transcript"), p. 5, lines 2-6.   She also testified that the Don Lorenzo Property was in her name and that it "the deed was pulled on it" in October or November of the previous year.  *Id.,* p. 7, lines 11-19.

21.  Plaintiff filed this adversary proceeding on November 16, 2007.

22.  Defendant filed an Amended Statement of Financial Affairs, with attached Supplement ("Amended SOFA"), on December 4, 2007, disclosing the following transfers that were not disclosed on her original Statement of Financial Affairs:

a.   Transfer of a 1966 Mustang to Chester Stump for $800.00 on December 27, 2007;

b.   Transfer of a 1966 TEX Trailer to Michael Parra for $700.00 on September 14, 2005; and

c.   Transfer of a 1997 Jeep with undetermined value to Alan Pohl, Defendant's brother, in October of 2006, representing property of mother's estate.

23.  Defendant executed a Bill of Sale for the 1966 Mustang reflecting Sherill Johnson as Seller and Chester Stump as buyer dated November 11, 2003.  *See* Exhibit 21 - Bill of Sale.

24.  Defendant obtained a duplicate title for the 1966 Mustang in the name of Sherill Johnson Pohl on September 13, 2005.  *See* Plaintiff's Exhibit 19 - Duplicate Title reflecting

7

Sherill Pohl Johnson as registered owner; Exhibit F to Complaint - Affidavit of Phyllis Dinkel, Exhibit 1 - Application for Duplicate Title.

25.   Title to the 1966 Tex Trailer was in the name of Defendant and Richard Blaney.  *See* Exhibit H to Complaint - Cancelled Certificate of Title reflecting Registered owners as Richard Blaney or Sheri Pohl.

26.  The Amended SOFA also disclosed the forfeiture of the real estate contract for the Don Lorenzo Property and Defendant's receipt of proceeds of the sale.

27.  Defendant transferred $5,000.00 from the proceeds of the sale of the Don Lorenzo Property to her daughter, Kacey Johnson, who then deposited the funds into the checking and savings account at Bank of the West held under the name of her twin sister, Tracey Johnson.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 70, lines 12-25.    Defendant used the $5,000.00 from the proceeds of the sale of the Don Lorenzo Property to live on.  *Id.*

28.   The only reference in Defendant's statements and schedules to property Defendant received from her mother's probate estate is "Mother's Legacy" valued at $7,000.00.

29.  Defendant was married to Richard Blaney in July 7, 2001.

30.  In 2005, Plaintiff initiated a civil action in the Second Judicial District Court against Richard T. Blaney, d/b/a Superior Sheds & Garages, LLC, Better Built Sheds, LLC, as Case No. 0101-CV-2005-02276 ("State Court Action").

31.  Plaintiff obtained a judgment for restitution and civil penalties against Richard Blaney in the State Court Action on August 12, 2005 based on unfair or deceptive trade practices relating to the operation of a shed and garage construction business.  *See* Exhibit B to Complaint - *Judgment on Restitution, Civil Penalties and Continued Writ of Ne Exeat* ("Judgment").

8

32.  Defendant was not initially named as a party to the State Court Action.

33.  In April of 2006, Defendant intervened in the State Court Action, seeking to claim exemptions from execution on the Judgment.

34.  The State District Court permitted Defendant to intervene in the State Court Action, but enjoined Defendant from transferring, conveying, or otherwise disposing of any property in which she or Richard Blaney held an interest.  *See* Plaintiff's Exhibit 2 - *Stipulated Order Granting Sherill Johnson's Motion to Intervene and Injunction*, entered April 18, 2006.

35.  On July 12, 2006, the State District Court determined that the Judgment represented community debt.  *See* Exhibit C to Complaint - *Memorandum Opinion and Order on Intervenor's Motion to File Claim Exemptions and Plaintiff's Motion to Establish Judgment as Community Debt*.

36.  Ultimately, the State District Court amended the Judgment, finding that Defendant was jointly and severally liable for the amounts awarded Plaintiff under the Judgment.  *See* Exhibit D to Complaint - *Amended Judgment on Restitution*.

37.  Plaintiff executed on its Judgment pursuant to a Writ of Assistance and seized the 1966 Mustang on December 27, 2006.  *See* Exhibit 17 - Affidavit of Anita Wolff;  Affidavit of Justin Woolf - Exhibit 18.

DISCUSSION

Section 727(a)(4) False Oath

In seeking the denial of a discharge pursuant to § 727(a)(4)[6], the objecting party must

---

[6]Section 727(a)(4) provides:
    the debtor knowingly and fraudulently, in or in connection with the case --
        (A) made a false oath or account;

9

establish by a preponderance of the evidence 1) that the debtor made a statement under oath; 2) that the statement was false; 3) that the debtor knew the statement was false; 4) that the debtor made the statement with fraudulent intent; and 5) that the statement related materially to the bankruptcy case.[7] For purposes of § 727(a)(4), a debtor's petition, schedules, statement of financial affairs, statements at the creditors meeting, and testimony at Rule 2004 examinations all constitute statements made under oath.[8] The purpose of § 727(a)(4)(A) is to assure that adequate information is available to those interested in administration of the estate without the need of examinations or investigations to determine whether the information provided is true.[9] For this reason, the false oath "need not be an affirmative misstatement; knowing and fraudulent omissions will also suffice." *Butler,* 377 B.R. at 922 (citations omitted). A statement is material

---

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(4).

[7] *Syngenta Seeds, Inc. v. Eigsti (In re Eigsti)*, 323 B.R. 778, 783-84 (Bankr. M.D. Fla. 2005).

[8] *In re Butler,* 377 B.R. 895, 922 (Bankr.D.Utah 2006)("'A debtor's petition, schedules, statement of financial affairs, statements made at a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4).'")(quoting *Structured Asset Services, LLC v. Self (In re Self),* 325 B.R. 224, 245 (Bankr.N.D.Ill. 2005)(remaining citations omitted); *John Deere Co. v. Broholm (In re Broholm),* 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004); *In re Vanschoiack,* 356 B.R. 56, 63 (Bankr.D.Idaho 2006)("A 'false oath' under § 727(a)(4)(A) includes false affirmative statements, or knowing omissions, on a debtor's schedules and statement of financial affairs, which are signed under penalty of perjury.")(citations omitted).

[9] *United States v. Craig (In re Craig)*, 252 B.R. 822, 828-29 (Bankr. S.D. Fla. 2000).

10

under this provision when it bears relationship to debtor's business transactions or estate, or concerns discovery of assets, business dealings, or existence and disposition of debtor's property.[10] The fraudulent intent element of § 727(a)(4) can be established in one of two ways 1) that the debtor has engaged in a pattern of concealment; or 2) that the debtor had a reckless indifference for the truth.[11] In other words, not caring whether some representation is true or false-the state of mind known as "reckless disregard"is, at least for purposes of the false oath provision, the equivalent of knowing that the representation is false and material.[12] Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are unavailable to the bankruptcy estate.[13] Debtors may not decide for themselves the nature of their property interest or that a property interest need not be disclosed.[14]

> Failure to Disclose All Names Used by Defendant During the Eight Years Preceding the Petition Date.

The Defendant failed to disclose the name Sherill Lynn Blaney in her statements and schedules despite the fact that she used the name Sherill Lynn Blaney to serve as personal representative of her mother's probate estate. She unequivocally stated at her deposition that she never went by the name Sherill Blaney. A debtor's failure to list all other names the debtor

---

[10]*Self*, 325 B.R. at 249.

[11]*Craig*, 252 B.R. at 829 (citation omitted); *The Cadle Company, Inc. v. Leffingwell (In re Leffingwell)*, 279 B.R. 328, 350 (Bankr. M.D. Fla. 2002).

[12]*In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)(upholding a grant of summary judgment denying discharge under § 727(a)(4)).

[13]*Leffingwell,* 279 B.R. at 350.

[14]*Garrett v. Vaughan (In re Vaughan),* No. WO-05-028, 2006 WL 751388, at *5 (10th Cir. BAP 2006)(unpublished opinion)("The debtors may not decide for themselves the nature of their interest in property, the value of that property or the amount of their equity therein.").

11

uses or has used can constitute sufficient grounds to deny the debtor's discharge under 11 U.S.C. § 727(a)(4). *See Torgenrud v. Schmitz (In re Schmitz)*, 224 B.R. 149 (Bankr.D.Montana 1998). In *Schmitz,* the debtor failed to disclose her married name on her bankruptcy schedules. *Id.* In denying the debtor's discharge, the *Schmitz* court found that the debtor failed to provide the name she had consistently used since her marriage to H. John Balyeat, despite her sworn testimony at the meeting of creditors that she only used the name Linda Sue Schmitz as listed in her petition. *Id.* at 151. The *Schmitz* court found that the debtor's omission was both material and fraudulent, reasoning that by failing to provide adequate information regarding her married name, the debtor's false oath related to the bankruptcy estate and concerned creditors' and the Trustee's ability to discover assets or business dealings. *Id.* The court rejected the debtor's explanation that she failed to list her married name because she wanted to avoid any embarrassment or questions that might arise by disclosing her married name, given that her non-filing spouse was an attorney whose practice dealt primarily with collection of unpaid accounts. *Id.* at 152, n.1.

Here, Defendant failed to disclose in her bankruptcy statements and schedules the name Sherill Lynn Blaney, the name under which she served as personal representative of her mother's estate. This failure is material because it relates to property the Defendant inherited through probate which could have become property of the bankruptcy estate. Defendant further failed to fully disclose in her statements and schedules the property she received from her mother's estate. She failed to disclose the following transfers of the money she received from her mother's estate: 1) the purchase a Certificate of Deposit in her daughter's name at Bank of the West; and 2) the establishment of a checking and savings account in her daughter's name at Bank of the

West.   The only disclosure is a $7,000.00 "Mother's Legacy" found on Schedule B.   Yet her

mother's will provided for her to receive one-third of the estate, valued at $108,000.00.

At her deposition, Defendant testified that she did not bring up anything about her

mother's estate when she first filed for bankruptcy because she did not realize it was part of this

bankruptcy.  *See* Plaintiff's Exhibit 3 - Johnson Deposition, p. 8.   It is not the debtor's province

to determine what to disclose and what to omit from bankruptcy schedules.[15]  Full and complete

disclosure is the only way to ensure that the bankruptcy system functions as intended.[16]

"'[C]omplete financial disclosure is a condition precedent to the privilege of discharge.'"  *Self,*

325 B.R. at 245 (quoting *Glucona Am., Inc. v. Ardisson (In re Ardisson),* 272 B.R. 346, 359

(Bankr.N.D.Ill. 2001)).

<u>Failure to Disclose Pre-petition Sale of Don Lorenzo Property.</u>

Defendant did not disclose the sale of the Don Lorenzo Property in her initial statement

of financial affairs.   Only after the Plaintiff initiated this adversary proceeding did Defendant

amend her statement of financial affairs to disclose the transaction and report that she transferred

$5,000.00 from the proceeds of the sale to Richard Blaney, despite the fact that Defendant

admitted at the meeting of creditors that the Don Lorenzo Property was in her name and that the

---

[15]*See The Cadle Company v. King (In re King),* 272 B.R. 281, 300 (Bankr.N.D.Okla. 2002)(noting that "'[t]he bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what *he* thinks are important assets or debts.  Debtor[s] must, under oath list *all* creditors and assets, as well as all transfers of property within the prior year.'")(emphasis added by *King*)(quoting *Superior Nat'l Bank v. Schroff (In re Schroff),* 156 B.R. 250, 256 (Bankr.W.D.Mo. 1993)).

[16]*See Schmitz,* 244 B.R. at 151 ("sworn statements in bankruptcy schedules 'must be regarded as serious business' because 'the system will collapse if debtors are not forthcoming.'")(quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987)).

real estate contract was forfeited in November of 2006. *See* Exhibit 5 to Complaint - § 341 Testimony, p. 7, lines 8 - 22. The Tenth Circuit has stated that, as a matter of law, "no inference of fraudulent intent can be drawn from an omission when *the debtor promptly* brings it to the court's or trustee's attention *absent other evidence of fraud."* *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir. 1997) (emphasis in original). Contrary to *Brown,* in this case the Defendant did *not* promptly correct the omission, but filed the Amended SOFA more than two months after the meeting of creditors, after Plaintiff filed this adversary proceeding. Moreover, given that the sale occurred when Defendant was subject to the Injunction issued in the State Court Action, there is other evidence of Defendant's inequitable conduct with regard to this transaction.

Amendments filed after a party initiates an adversary proceeding which seeks to deny the debtor's discharge do not "undo" a debtor's false oath.[17] Nor does the fact that Defendant did not retain the full proceeds from the sale and spent the remainder pre-petition on daily living expenses excuse Defendant's failure to make a complete disclosure at the outset; neither harm to creditors nor an intent to injure creditors is required under 11 U.S.C. § 727(a)(4).[18] What is

---

[17]*See Baccala Realty, Inc. v. Fink (In re Fink),* 351 B.R. 511, 526-527 (Bankr.N.D.Ill. 2006)(noting that "[s]ubsequent voluntary disclosure through testimony or an amendment to the schedules or statement of financial affairs does not expunge the falsity of the prior oath.")(citing *Bensenville Community Center Union v. Bailey (In re Bailey),* 147 B.R. 157, 165 (Bankr.N.D.Ill. 1992)).

[18]*See Chalik v. Moorfield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)(per curiam)("It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement."); *Vanschoiack,* 356 B.R. at 64 ("The asset's value need not be 'material,' nor must a debtor 'succeed in harming creditors to warrant denial of discharge [under § 727(a)(4).'")(quoting *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1281-82 (9th Cir. 1996)(quoting *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir. 1986)).

14

required is that the false oath be made knowingly, with intent to deceive, which "may be established through circumstantial evidence, including inferences from the debtor's conduct, all surrounding circumstances, and apparent course of conduct." *Vanschoiack,* 356 B.R. at 65 (citation omitted).

Defendant's course of conduct evidences a pattern of concealment from which the Court can infer fraudulent intent within the meaning of 11 U.S.C. § 727(a)(4). The sale of the Don Lorenzo Property occurred at a time that Defendant was subject to an Injunction issued in the State Court Action that precluded her from transferring any property in which either she or Richard Blaney held any interest. She used the proceeds from the sale as she saw fit and did not disclose the transfer in her statements and schedules. And as discussed below, the failure to disclose the transfer of Don Lorenzo Property in her initial statements and schedules is just one of several omissions and misstatements Defendant made under oath in connection with this bankruptcy proceeding.[19]

<u>Other Omissions and Misstatements.</u>

Defendant did not list the sale of the 1996 TEX Trailer on her initial statements and schedules. This transaction occurred nearly two years prior to the date of the filing of Defendant's bankruptcy proceeding. Defendant's reason for omitting the transfer was that she just forgot about it. *See* Attachment to Amended SOFA. Had this been the only omission or

---

[19]*Cf. Clark v. Reed (In re Reed),* 293 B.R. 65, 71 (Bankr.D.Kan. 2003) (granting summary judgment denying debtor's discharge under 11 U.S.C. § 727(a)(4), finding that a reasonable inference of fraudulent intent could be drawn from the debtor's course of conduct, and concluding that "the number of known omissions -- here, three -- also supports a finding of fraudulent intent.")(citing *Calder v. Job (In re Calder),* 907 F.2d 953, 956 (10th Cir. 1990)(wherein the court found it significant that there were four separate omissions from the debtor's statements and schedules)).

misstatement, the Court might agree that such omission would be insufficient to support a denial of discharge.[20]   But this omission is only one of many.   Defendant also failed to list the transfer of the 1966 Mustang to Chester Stump on her initial statement of financial affairs.   The Exhibits attached to Plaintiff's Complaint and filed in support of the Motion suggest that Defendant and/or Richard Blaney attempted to transfer the 1966 Mustang on the day of the seizure.   *See* Exhibit F to Complaint - Affidavit of Phyllis Dinkel; Plaintiff's Exhibit 17 - Affidavit of Anita Wolff; Plaintiff's Exhibit 18 - Affidavit of Justin Woolf.   Whether the evidence supports this allegation is not necessary to the Court's determination.   The Amended SOFA, which Defendant signed under penalty of perjury, indicates that the transfer occurred on December 27, 2006, which is the day *after* Plaintiff executed on its Writ of Assistance.   Other documents show that a Bill of Sale transferring the 1966 Mustang to Chester Stump was dated in November of 2003, yet Defendant obtained a duplicate title in her name in 2005.   There are many unanswered questions with regard to the 1996 Mustang which reflect Defendant's ongoing pattern of conduct regarding transfers of property which she owned in which she had an interest.

But most egregious is Defendant's failure to disclose the full extent of her inheritance from her mother's estate.   Upon receiving property from her mother's estate, she took steps to pass the money she received to her children.   Even her Amended SOFA does not disclose the transfer of the money she received from her mother's estate to her daughter via the Certificate of Deposit and bank account at Bank of the West under item 10., which requires the debtor to list all property other than property transferred in the ordinary course of the business or financial

---

[20]*See Butler,* 377 B.R. at 922 (stating that "'[a] debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence . . . . an honest error or mere inaccuracy is not a proper basis for denial of discharge.'")(quoting *Brown,* 108 F.3d at 1294-95).

16

affairs of the debtor within two years of the commencement of the bankruptcy proceeding.   Nor

were they reported as gifts under Item 7.[21] on the statement of financial affairs or the Amended

SOFA.  These transfers aggregated over $16,000.00 and occurred within one year of the date of

the filing of the Defendant's bankruptcy petition.   The property would otherwise have

constituted property of the bankruptcy estate.  In short, Defendant has exhibited a pattern of

concealment and lack of full disclosure from which the Court can infer fraudulent intent within

the meaning of 11 U.S.C. § 727(a)(4)(A).

<u>Section 727(a)(2) Concealment or Transfer with Intent to Hinder or Delay</u>

Section § 727(a)(2)[22] provides for the denial of a discharge if a debtor, with intent to

hinder, delay or defraud, transfers, removes or conceals property of the debtor within one year

before the filing or after filing of the petition.[23]   In order to obtain a denial of discharge under §

727(a)(2), a plaintiff must show by a preponderance of the evidence that (1) the debtor

---

[21]Item 7. on the statement of financial affairs requests the debtor to:
List all gifts or charitable contributions made within one year immediately
preceding the commencement of this case, except ordinary and usual gifts to
family members aggregating less than $200 in value per individual family
member and charitable contributions aggregating less than $100 per recipient.

[22]Section 727(a)(2) provides:
The court shall grant the debtor a discharge, unless --
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an
officer of the estate charged with custody of property under this title, has
transferred, removed, destroyed, mutilated, or concealed, or has permitted
to be transferred, removed, destroyed, mutilated or concealed --
(A) property of the debtor, within one year before the date of the
filing of the petition; or
(B) property of the estate, after the date of the filing of the
petition[.]
11 U.S.C. § 727(a)(2)(A) and (B).

[23]11 U.S.C. § 727(a)(2)(A) and (B); *Brown*, 108 F.3d at 1293.

17

transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing or after the bankruptcy, (4) with the intent to hinder, delay, or defraud a creditor.[24]  The plaintiff bears the burden of establishing each of these elements by a preponderance of the evidence.[25]

As a general matter, questions involving a defendant's intent are rarely determined on summary judgment.[26]  However, summary judgment denying a debtor's discharge under 11 U.S.C. § 727(a)(2) is sometimes appropriate.[27]  For purposes of denial of discharge under this section, intent to hinder, delay or defraud may be shown through circumstantial evidence of the debtor's course of conduct from which the Court may infer actual intent to hinder, delay or defraud creditors.[28]

_____

[24]*Brown,* 108 F.3d at 1293.

[25]*Annino, Draper & Moore, PC v. Lang (In re Lang)*, 246 B.R. 463, 468 (Bankr. D. Mass. 2000), *aff'd,* 256 B.R. 539 (1st Cir. BAP 2000) (citations omitted); *Brown,* 108 F.3d at 1293.

[26] *Gorsky v. D'Avignon (In re D'Avignon)*, 25 B.R. 838, 844 (Bankr. Vt. 1982).

[27]*See e.g. Carter v. Trammell (In re Trammell)*, 197 B.R. 309, 311 (Bankr.W.D. Ark. 1996) (granting summary judgment denying discharge under § 727(a)(2)(A) on three separate grounds); *First Nat'l Bank v. Davison (In re Davison)*, 2004 WL 2852352 * 4 (10th Cir. BAP 2004) (upholding grant of summary judgment denying discharge under § 727(a)(4)); *cf. Johnson & Johnson, Fin. Corp. v. Gertsch (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999) (upholding grant of summary judgment on intent to defraud requirement of § 523(a)(2)(B) and stating, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue."); and *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

[28]*Lang*, 246 B.R. at 468; *Butler,* 377 B.R. at 916 ("A denial of discharge under either subsection of § 727(a)(2) requires proof of *actual* intent to hinder, delay, or defraud a creditor; however, such intent may be proven by circumstantial evidence or by inferences drawn from a debtor's course of conduct.")(emphasis in original)(citing *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey),* 938 F.2d 1073, 1077 (10th Cir. 1991)(remaining citations omitted)).

18

To infer fraudulent intent, courts look for specific indicia of fraud.[29]   The indicia or

badges of fraud including the following: (1) lack or inadequacy of consideration for a transfer;

(2) existence of a family, friendship, or special relationship between parties; (3) attempt by

debtor to keep asset or transfer secret; (4) financial condition of the party sought to be charged

both before and after transaction; (5) existence or cumulative effect of pattern or course of

conduct after incurrence of debt, onset of financial difficulties, or pendency or threat of suits by

creditors; and (6) overall chronology of events and transactions.[30]

Establishment of Certificate of Deposit in Name of Daughter and Post-Petition Cashing
Out of Accounts.

Defendant used a significant portion of the money she received from her mother's estate

(more than twice the amount disclosed in her statements and schedules) to purchase a Certificate

of Deposit in the name of her daughter.   This constitutes a transfer of property.[31]   Defendant

---

[29]*Carey*, 938 F.2d at 1077.

[30]*Brown,* 108 F.3d at 1293.  *See also, Lang,* 246 B.R. at 469 (finding that transfer of estate assets to debtor's father within one year of bankruptcy warranted denial of discharge) and *Nat'l City Bank, Marion v. McNamara (In re McNamara)*, 89 B.R. 648, 654 (Bankr. N.D. Ohio 1988) (granting summary judgment denying discharge under § 727(a)(2) for concealment of property upon admission by debtor that he concealed cash in a closet then used cash to purchase house in another's name and stating that a presumption of fraudulent intent arises when a debtor transfers property gratuitously or to relatives).

[31]*See* 11 U.S.C. § 101(54) defining the term "transfer" as follows:
> each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –
>> (I) property; or
>> (ii) an interest in property[.]
> 11 U.S.C. § 101(54)(D).

*See also, Butler,* 377 B.R. at 917-18 (noting that "[u]nder the Bankruptcy Code, 'transfer' is defined in the broadest terms possible" and "includes a transfer of possession, custody, or control even if there is no transfer of title and which also includes deposits to, withdrawals from, and transfers between bank accounts or similar accounts.")(citations omitted).

did not disclose either the transfer or the accounts at Bank of the West in her statements or schedules. In fact, the Certificate of Deposit was cashed out post-petition. Given Defendant's failure to fully disclose the extent of the property she inherited through her mother's probate, it is not difficult to infer that Defendant's purpose in transferring the property to her daughters was to shield this money from others, including Defendant's creditors. Several of the badges of fraud outlined above are present: the transfer was a gift to her daughters for no consideration; the transfer was to a family member; and the transfer was not disclosed in Defendant's statements and schedules. Defendant's statement that she made the transfer because she felt that was what her mother would have wanted is self-serving, and does not create a fact issue sufficient to defeat summary judgment.[32]

Defendant further argues that she could not have formed any intent to defraud because she had no idea that Plaintiff was a creditor until Plaintiff began to levy upon its judgment. This contention is belied by the fact that an order was entered in the State Court Action in April of 2006 enjoining her from transferring or disposing of any property in which she or Richard Blaney has any interest. *See* Plaintiff's Exhibit 2. Defendant received property from her mother's probate estate in October and November of 2006 and promptly deposited a good portion of it in a Certificate of Deposit and a checking and savings account in the name of her daughter at a time when she knew she was subject to the injunction imposed in the State Court

---

[32]*See Loper v. Loper (In re Loper),* 329 B.R. 704, 707 (10th Cir. BAP 2005)(acknowledging that courts place some limitations on the non-moving party's attempt to show a genuine issue of material fact through affidavit, stating that "[a]n affidavit containing conclusory statements without specific supporting facts lacks probative value . . . . 'conclusory and self-serving affidavits are not sufficient.'")(quoting *Murray v. City of Sapulpa,* 45 F.3d 1417, 1422 (10th Cir. 1995)(quoting *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991)).

Action.

CONCLUSION

Even though discharge provisions must be construed strictly against objectors and liberally in favor of debtors in order to promote the Code's "fresh start" policy, "a bankruptcy discharge is equitable in nature, and intended only for honest debtors." *Vanschoiack,* 356 B.R. at 63 (citations omitted). It is clear from the undisputed facts in this case that the Defendant is not an honest debtor who should be afforded a discharge under the provisions of the Bankruptcy Code. She lied under oath, failed to fully and faithfully disclose both pre and post-petition transfers, omitted relevant information from her statements and schedules, and shielded her mother's estate from the bankruptcy. This lack of full disclosure demonstrates a pattern of concealment and reckless indifference to her obligations under the Bankruptcy Code from which the Court may infer fraudulent intent. Denial of discharge is therefore appropriate under either 11 U.S.C. § 727(a)(2)(A) or 11 U.S.C. § 727(a)(4).

The Court will enter a judgment consistent with this Memorandum Opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: September 24, 2008

COPY TO:

James C. Jacobsen
Attorney for Plaintiff
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM 87102

Gary B. Ottinger
Attorney for Defendant Sherill Johnson
PO Box 1782
Albuquerque, NM 87103

21